SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00312-AB-01** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **EDILMER NAVARRO GOMEZ,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 21 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant, a street-level fentanyl dealer, was involved in selling an incredibly addictive, destructive, and deadly poison within the greater Portland, Oregon metropolitan area. Fentanyl has been devastating the community, and this defendant was preying upon some of our most vulnerable community members for his own personal profit. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the defendant's personal history and characteristics the government believes the requested sentence

**Government's Sentencing Memorandum**                                    **Page 1**

is both reasonable and justified.  The defendant will also very likely be deported to Honduras as a result of his conviction.

## A.     Summary of Proceedings.

On March 19, 2026, the defendant pled guilty to Count 1 of the Indictment which charges him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  The maximum sentence the Court may impose is a term of 40 years' imprisonment, a fine of $5,000,000, and at least four years of supervised release.  The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government has no objection to the facts underlying the defendant's count of conviction (PSR ¶¶ 19 - 23) and we believe that the majority of the Sentencing Guideline calculations (PSR ¶¶ 28 – 30, 32 - 36) are accurately outlined in both the PSR and plea agreement.  The government objects to the PSR's assertion that the defendant was a "minor participant" because it is unsupported by the evidence that the defendant was buying the fentanyl he was selling.  *See* PSR 21, 31.

In his plea agreement defendant admitted that:

> At trial the government could prove that defendant conspired with others to distribute and possess with intent to distribute fentanyl here within the District of Oregon.  As part of this conspiracy, on or about July 3, 2025, within the District of Oregon, law enforcement investigators arrested the defendants when they showed up to complete a drug deal and they then searched their vehicle.  Inside the vehicle investigators found and seized approximately 226 grams of powdered fentanyl.  Trained drug investigators would testify that the amount of fentanyl seized indicated it was possessed for purposes of further distribution.  Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

///

**Government's Sentencing Memorandum**                                                      **Page 2**

### B.    Government's Sentencing Guideline Calculations.

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

The parties agree that defendant's relevant conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), is between 160 and 280 grams of fentanyl for an initial Base Offense Level of 26. PSR ¶ 28, Plea Agreement ¶ 8.

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward departure in his Sentencing Guidelines.  PSR ¶ 29, Plea Agreement ¶ 9.

Because the defendant also qualifies as a "Zero Point Offender," pursuant to USSG § 4C1.1, the parties will recommend a two-level downward adjustment in his Sentencing Guidelines range.  PSR ¶ 34, Plea Agreement ¶ 10.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 35 - 36, Plea Agreement ¶ 11.

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, how similarly situated defendants have been handled by the USAO

and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a three-level downward variance in his overall offense level.  Plea Agreement ¶ 12.

The government's three-level 3553(a) reduction would result in an Adjusted Offense Level of 16 and with a Criminal History Category of I, and advisory sentencing guideline range of 21 to 27 months' imprisonment.

Defendant has been in federal custody since the federal arrest on September 10, 2025.

**C.      As a Fentanyl Distributor – who was Buying and Selling Fentanyl for Profit – the Defendant is not entitled to a Role Reduction.**

The PSR recommends a two-level downward adjustment because they view the defendant as a "minor participant" in the crime.  PSR ¶ 29.  The government disagrees.  The defendant, who pled guilty to engaging in a conspiracy to distribute fentanyl is only being held responsible for the fentanyl that was seized in the car – fentanyl that **he** bought and that **he** was selling for a profit – and thus he is not entitled to a role reduction.

Under the Sentencing Guidelines the Court may reduce a defendant's offense level by two levels if he "was a minor participant in any criminal activity."  USSG § 3B1.2(b).  "The defendant bears the burden of proving that he [or she] is entitled to a downward adjustment based on his [or her] role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006) (citation omitted).  To carry this burden, the defendant must prove by a preponderance of the evidence that he was "substantially less culpable than the average participant in the criminal activity."  USSG § 3B1.2, comment. (n.3 (A)); *see United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994).  The relevant pool for comparison of his role in the criminal activity is "all actors who participated" in the "specific criminal scheme" if the court finds "sufficient evidence of

**Government's Sentencing Memorandum**                                                      **Page 4**

their existence and participation." *United States v. Rojas-Millan*, 234 F.3d 464, 473-74 & n.5 (9th Cir. 2000). Identifying hypothetical participants, or participants in the abstract, is not enough. *See e.g., United States v. Rosas*, 615 F.3d 1058, 1068 (9th Cir. 2010) ("Every drug trafficking defendant could point to an unknown network preceding them in the drug trade. Such an argument would normally be ineffective when considering whether the defendant is entitled to a mitigating role reduction.").

At its core, the overarching question remains, is the defendant "substantially less culpable than the average participant in the criminal activity" for which he is being sentenced for based upon the "facts of the particular case." USSG § 3B1.2, comment. (n.3 (A) and (B)). In guiding the determination the Commission added a "non-exhaustive" list of five factors for courts to consider when evaluating a defendant's role under this baseline standard. USSG § 3B1.2, comment. (n.3(C)). These factors are:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]

(v)     the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2 comment. (n.3(C)(i--v)).

///

**Government's Sentencing Memorandum**                                    **Page 5**

The commentary does not limit the significant discretion afforded to sentencing courts. A district court may apply a role reduction "even if some of the factors weigh against doing so," refuse to apply the reduction "even if some of the factors weigh in favor" of doing so, and "consider other reasons for granting or denying a . . . role reduction." *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016).

Here, defendant has not been charged, implicated, nor is he being held responsible for the entire drug trafficking activities of an overarching conspiracy. Nor, is he being held responsible for all the fentanyl he admitted selling on prior occasions. His relevant conduct is merely limited to what he and his co-defendant were caught with when they were arrested. Although the defendant had a role as a delivery person within a dispatcher style group – where a customer calls a central number and that person takes the order and then sends someone to deliver the drugs – the difference between this case and other dispatcher style cases is that the defendant himself bought the fentanyl that was seized. The dispatcher might field the calls and link the defendant with the customer, but this defendant was also an independent businessman.

In the Guidelines, the Sentencing Commission noted that the minor role adjustment is only "generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities **for little or no monetary compensation or with a primary motivation other than profit** (e.g. the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense)." USSG § 2D1.1(e)(2)(B)(ii) (emphasis added). Here, the defendant was selling drugs he bought for his personal profit and thus the role reduction is unwarranted.

**Government's Sentencing Memorandum**                                    **Page 6**

As the PSR notes, during a post-*Miranda* interview the defendant referred to the fentanyl as "business," and "stated the amount [of fentanyl] seized was the remainder of the 10 ounces **he purchased** for $10,000 a week prior" and "[h]e advised that **he sold** an average of three ounces a day last month." PSR ¶ 21 (emphasis added). The defendant was not distributing someone else's fentanyl – rather he was buying it, he was selling it, and thus he was profiting off of it – and he was buying a lot at a time. Thus, at the end of the day, the defendant cannot show that he was "substantially less culpable than the average participant in the criminal activity," that average participant being other street-level drug dealers. This defendant bought $10,000 of fentanyl – 10 ounces – at a time and was then selling an average of three (3) ounces of fentanyl a day – that is $3,000 worth of fentanyl being sold by the defendant every day in Portland. On the defendant's phone, Investigators found these pictures showing a substantial quantity of cash and fentanyl (the last picture appears to be how a kilogram of fentanyl is often packaged):



///

///

**Government's Sentencing Memorandum**                                    **Page 7**



Criminal Complaint at ¶ 13.

The defendant was not a minor player.  Rather, the defendant pled to what he was doing and he is only being held responsible for what he possessed with intent to distribute. Accordingly, the Court should deny his request for a role reduction.

**D.    Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 21 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

**Government's Sentencing Memorandum**                                                    **Page 8**

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening. For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death. *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024). In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024). In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING

**Government's Sentencing Memorandum** **Page 9**

THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

The defendant was a street-level dealer selling an extremely deadly poison – and he was selling a lot of it.  We have no doubt that the defendant came to the United States at a young age seeking more opportunities than he thought were available to him in Honduras.  However, that experience does not provide any justification or excuse for the harm he in turn inflicted upon others.  While we recognize the defendant is relatively young and was a street-level dealer, the fact is that fentanyl kills.  Even in very small amounts, fentanyl is a deadly poison and this defendant distributed that poison for the sole purpose of making money – and without any regard for the harm he was causing others.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the

need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 21 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

At the time of sentencing we ask the Court to dismiss Count 2.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Honduras.

Dated: June 18, 2026.                          Respectfully submitted,

                                               SCOTT E. BRADFORD
                                               United States Attorney


                                               /s/ *Scott Kerin*

                                               SCOTT M. KERIN, OSB # 965128
                                               Assistant United States Attorney

**Government's Sentencing Memorandum**                          **Page 11**